UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KIRSCH RESEARCH AND
DEVELOPMENT, LLC,

     Plaintiff,

v.                          Case No: 8:20-cv-1982-T-33JSS

INTERTAPE POLYMER CORP.,

     Defendant.

_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Intertape Polymer Corporation's Motion to Dismiss, filed on September 29, 2020. (Doc. # 47). Plaintiff Kirsch Research and Development, LLC filed a response in opposition on October 13, 2020. (Doc. # 52). For the reasons that follow, the Motion is denied.

**I.   Background**

Kirsch is a limited liability corporation with its principal place of business in Simi Valley, California. (Doc. # 33 at ¶ 5). Kirsch is the current owner of U.S. Patent 6,308,482 ("the '482 Patent") for a "reinforced roofing underlayment and method of making the same." (Id. at ¶¶ 3, 19; Doc. # 33-1).

1

An "underlayment" is one of three layers of a typical sloped roof. A "roof support deck" — "typically made of either solid wooden sheathing . . . or spaced sheathing installed over the rafter beams" — is the bottommost layer and provides support to the roof. (Doc. # 33 at ¶ 11). An "overlayment" — "typically made of shingles, tiles, metal roofing, or other similar materials" — is the outermost layer and provides "protection from weather conditions such as wind, rain, and snowmelt." (Id.). An "underlayment" is a layer of material "sandwiched" between the two, meant to provide additional protection against moisture and the elements. (Id.).

The '482 Patent covers a reinforced roofing underlayment made with a "woven synthetic scrim," "coated on at least one side by a layer of thermoplastic material," and possibly including a "slip-resistant outer surface." (Id. at ¶¶ 17-19; Doc. # 33-1). The "interwoven strands" of the synthetic scrim are "strong enough to resist tearing in various directions," and the thermoplastic layer provides a "weather-resistant barrier to prevent moisture from passing through." (Doc. # 33 at ¶ 19). The slip-resistant outer surface allows "roofers [to] walk on the roofing underlayment without slipping during installation." (Id. at ¶¶ 17, 27).

Kirsch claims these patented features greatly improve on "conventional" roofing underlayments, which are typically produced by "coating organic paper with a layer of asphalt." (Id. at ¶¶ 12, 17-18). Paper and asphalt not only deteriorate when exposed to the elements, but rain, snow, and debris can accumulate on conventional underlayments to create a slippery and dangerous surface for workers installing the roof. (Id. at ¶¶ 13, 17). Thus, Kirsch asserts that the interwoven scrim, thermoplastic layer, and anti-slip surface make its synthetic underlayments "more durable, reliable, and safer" than conventional underlayments. (Id. at ¶ 18). Kirsch manufactures and sells several underlayment products using this patented technology, including "Sharkskin Comp, Sharkskin Ultra, Sharkskin Ultra SA, and Sharkskin Ultra Radiant." (Id. at ¶ 34).

Kirsch alleges that Intertape knowingly infringed its '482 Patent by "making, using, importing, selling, and/or offering to sell" certain synthetic underlayments. (Id. at ¶¶ 4, 48). These products — including the NovaSeal line of synthetic underlayment products and the Umbra line of synthetic underlayment products — directly infringe on Claims 1 and 2 of the '482 Patent by incorporating a "reinforcing scrim of interwoven strands," "at least one layer of

3

thermoplastic material," and a layer of "slip-resistant material" into their design. (Id.; Doc. # 33-2).

Kirsch also claims that by continuing to "encourage and instruct" customers to use the infringing products, Intertape knowingly and intentionally induced and continues to induce infringement of the '482 patent. (Doc. # 33 at ¶ 49). Kirsch argues that Intertape knew of the '482 Patent, or was at least willfully blind to it, since 2011.

First, Kirsch explains that Intertape is a direct competitor in the synthetic underlayment market, which is "relatively small." (Id. at ¶¶ 38-39). Kirsch has been a "well-known" and "well-respected" pioneer in this industry for over two decades, and was one of the first businesses to sell synthetic underlayments in the United States. (Id.).

All Kirsch underlayments have been marked with the '482 Patent since 2003. (Id. at ¶ 37). Kirsch prominently markets its products and distributes product literature marked with the '482 Patent. (Id.). Kirsch argues that given its "long-time presence in the market and regular advertising efforts, Kirsch's products are well-known in the industry." (Id. at ¶ 38).

Last, in addition to general awareness of Kirsch's products, Kirsch claims that Intertape specifically

4

interacted with the '482 Patent on at least two occasions. Kirsch states it attends six to ten trade shows a year where it hands out product samples and product literature marked with the '482 Patent. (Id. at ¶¶ 40-41). Kirsch alleges that in 2011, Keith Alfred of Intertape visited Kirsch's trade booth at the International Roofing Expo. (Id. at ¶ 43). The next year, Susan Sorbo of Intertape visited the trade booth at the same event. (Id. at ¶ 44). Both members of Intertape observed products marked with the '482 Patent and reviewed product literature also marked with the '482 Patent. (Id. at ¶¶ 43-45). Based on these interactions, Kirsch alleges Intertape has been aware of the '482 Patent since at least 2011. (Id. at ¶ 49).

Kirsch filed the present action in this Court on April 24, 2020, alleging willful and direct infringement and induced infringement of Claims 1 and 2 of the '482 Patent in violation of 35 U.S.C. § 271(a) and (b). (Doc. # 1). Kirsch filed an Amended Complaint on August 26, 2020, alleging the same claims. (Doc. # 33).

On September 29, 2020, Intertape filed a Motion to Dismiss. (Doc. # 47). Kirsch responded on October 13, 2020. (Doc. # 52). The Motion is ripe for review.

## II.   <u>Legal Standard</u>

On a motion to dismiss, the Court accepts as true all allegations in the complaint and construes them in the light most favorable to the plaintiff. <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. <u>Stephens v. Dep't of Health & Hum. Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.").

However,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

Furthermore, "[t]he scope of review must be limited to the four corners of the complaint." <u>St. George v. Pinellas Cty.</u>, 285 F.3d 1334, 1337 (11th Cir. 2002). But a "court may

6

consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005) (internal citation omitted).

## III. Analysis

### A.   Direct Infringement

In patent infringement cases,

> the Federal Circuit has held that a party claiming patent infringement only needs to: (1) allege ownership of the asserted patent; (2) name each individual defendant; (3) cite the patent that is allegedly infringed; (4) describe the means by which the defendants allegedly infringe; and (5) point to the specific sections of the patent law invoked.

Mesh Comm, LLC v. EKA Sys., Inc., No. 8:09-cv-1064-T-33TGW, 2010 WL 750337, at *2 (M.D. Fla. Mar. 4, 2010) (citing Phonometrics, Inc. v. Hosp. Franchise Sys., 203 F.3d 790, 794 (Fed. Cir. 2000)). In pleading these elements, a plaintiff must demonstrate a plausible claim for relief as required by Federal Rule of Civil Procedure 8. See Nexeon Ltd. v. Eaglepicher Techs., LLC, No. 1:15-CV-955-RGA, 2016 WL 6093471, at *1 (D. Del. Oct. 18, 2016) (noting that "patent infringement allegations are evaluated under the plausibility standard of [Twombly]").

Kirsch has alleged ownership of and cited the '482 Patent, named Intertape as defendant, specifically named the product lines sold by Intertape that allegedly infringe on the '482 Patent, and pointed to the section of the patent law that was allegedly violated. (Doc. # 33). Nevertheless, Intertape argues that Kirsch's claims should be dismissed because the allegedly infringing products do not contain every limitation of Kirsch's claims, either literally or by equivalent. (Doc. # 47 at 8).

Intertape argues that since Kirsch relied on the preamble to Claim 1 during prosecution, the preamble must limit both claims. (Id. at 9-10). Therefore, according to Intertape, "'[a] roofing underlayment **positioned between a roof support structure and an overlayment**,' is a required claim limitation" for both Claim 1 and Claim 2. (Id. at 10) (emphasis in original).

Intertape continues that the Amended Complaint does not plausibly allege that the "structural limitations of the preamble, the 'roof support structure' and 'overlayment,' are included in [Intertape's] Accused Products." (Id. at 8). Nor does the Amended Complaint allege that Intertape "places its products between the 'roof support structure' and 'overlayment' as required by Claims 1 and 2 of the '482

Patent." (Id.). Indeed, Intertape claims that Kirsch cannot make these allegations, because

> [Intertape's] Accused Products do not include "a roof support structure" or an "overlayment," nor does [Intertape] position its underlayments "between a roof support structure and an overlayment" because [Intertape] does not install roofing underlayments. End users, such as contractors or roofers, are responsible for installations.

(Id. at 4). Intertape concludes that the accused products do not contain every limitation present in the claims, therefore Kirsch fails to allege direct infringement. (Id. at 11).

Kirsch responds that there is no evidence that the preamble is limiting, and the intrinsic record is clear that the "present invention" of the '482 Patent is a "reinforced roofing underlayment." (Doc. # 52 at 9). By asking the Court to read the preamble as a claim limitation, Intertape is really asking the Court to engage in a "full claim construction process at the pleading stage, without the benefit of claim construction discovery or briefing, intrinsic evidence, and expert opinions." (Id. at 6).

The Court agrees with Kirsch that determining whether the preamble language is limiting would require the Court to rule on claim construction issues before any claim construction has occurred. "[C]laim construction at the

pleading stage — with no claim construction processes undertaken — [is] inappropriate." In re Bill of Lading Transmission and Processing Sys. Pat. Litig., 681 F.3d 1323, 1343 n.13 (Fed. Cir. 2012); see also Nalco Co. v. Chem-Mod, LLC, 883 F.3d 1337, 1349 (Fed. Cir. 2018) ("Defendants' arguments boil down to objections to Nalco's proposed claim construction for 'flue gas,' a dispute not suitable for resolution on a motion to dismiss.").

Rather than determining whether a claim is limited, at the motion to dismiss stage the Court affords the claims "their broadest possible construction." In re Bill of Lading, 681 F.3d at 1343 n.13. Kirsch's Amended Complaint need not prove the merits of the case, it need only place the "potential infringer . . . on notice of what activity . . . is being accused of infringement." K-Tech Telecomms., Inc. v. Time Warner Cable, Inc., 714 F.3d 1277, 1284 (Fed. Cir. 2013).

Here, the Amended Complaint alleges that certain "line[s] of synthetic underlayment products" used or sold by Intertape — including the NovaSeal and Umbra line — infringe on the '482 Patent. (Doc. # 33 at ¶ 48). Specifically, the underlayments infringe on Claims 1 and 2 by incorporating into their design "interwoven strands," a "layer of

thermoplastic material," and a layer of "slip-resistant material." (Id.; Doc. # 33-2).

Intertape does not dispute that its products are "underlayments." On the contrary, Intertape itself uses this label to describe the product in its Motion when it states, "nor does [Intertape] position **its underlayments** 'between a roof support structure and an overlayment' because [Intertape] does not install roofing underlayments. End users, such as contractors or roofers, are responsible for installations." (Doc. # 47 at 4) (emphasis added).

Indeed, according to Kirsch's claim chart, Intertape's own website labels the allegedly infringing products as "underlayments," and describes the products as including woven synthetic cores, polymer coatings, and textured anti-slip surfaces. (Doc. # 33-2).

Therefore, given its broadest possible construction, the Amended Complaint plausibly states that the products Intertape uses and sells as "underlayments" infringe on Kirsch's own line of synthetic underlayments, and sufficiently puts Intertape on notice of which products allegedly infringe on the '482 Patent. See Bel Fuse Inc. v. Molex Inc., 27 F. Supp. 3d 557, 563 (D.N.J. 2014) ("Here, there has been no claim construction and Plaintiff's

allegations are sufficient to put the sole Defendant on notice as to the allegedly infringing conduct.").

Intertape's arguments that the claims are actually narrower than this broad construction, and should be limited to an underlayment that is "positioned between a roof support structure and an overlayment," are more appropriate for a later stage of the proceedings. See Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co., No. 2:15-CV-1202-WCB, 2016 WL 1643315, at *1 (E.D. Tex. Apr. 26, 2016) ("It may be that the proceedings will ultimately determine that the term 'administering' does not reach conduct such as the conduct alleged in the complaint . . . Those questions, however, are properly left for claim construction, summary judgment, or trial."); Agarwal v. Topgolf Int'l, Inc., No. 8:16-cv-2641-T-33JSS, 2017 WL 40804, at *4 (M.D. Fla. Jan. 4, 2017) (holding that defendant's contention that its target trench does not qualify as a "plurality of target greens" was more appropriate for the claims construction stage).

The Court therefore declines to engage in claim construction of Claims 1 and 2 without the benefit of claim construction briefing and a hearing. See Walker Digital, LLC v. Facebook, Inc., 852 F. Supp. 2d 559, 563 (D. Del. 2012) ("The court is not prepared to engage in a claim construction

exercise at this stage of the proceedings, with no context whatsoever provided by discovery or a motion practice."); see also Tech. Innovations, LLC v. Amazon.com, No. 11-690-SLR, 2012 WL 1441300, at *2 (D. Del. Apr. 25, 2012) (denying motion to dismiss and refusing to construe "the claim terms 'book' and 'printed information,' at this stage of the proceedings, with no context provided by discovery or a motion practice"). The Motion is denied as to the direct infringement claim of Count I.

### B.   Induced Infringement

To state a claim for induced infringement, a plaintiff must affirmatively plead "facts plausibly showing that [defendants] specifically intended their customers to infringe the [patent] and knew that the customer's acts constituted infringement." Brandywine Commc'ns Techs., LLC v. T-Mobile USA, Inc., 904 F. Supp. 2d 1260, 1266 (M.D. Fla. 2012) (citing In re Bill of Lading, 681 F.3d at 1339). The "inducer must have an affirmative intent to cause direct infringement." DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306 (Fed. Cir. 2006).

The Supreme Court has held that actual knowledge is not required under this standard. "The doctrine of willful blindness applies to inducement of infringement claims such

13

that a defendant may not avoid inducement liability by deliberately avoiding actual knowledge that the acts it induces constitute patent infringement." <u>Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC</u>, No. 10CV677 JLS MDD, 2012 WL 202664, at *4 (S.D. Cal. Jan. 23, 2012) (citing <u>Glob.-Tech Appliances, Inc. v. SEB S.A.</u>, 563 U.S. 754, 766-67 (2011)). Therefore, at the motion to dismiss stage, the question before the Court is "whether [the plaintiff] has [pled] sufficient facts . . . for the Court to infer that the defendants had knowledge of [the plaintiff's] patents and that their products infringed on those patents." <u>Trading Techs. Int'l, Inc. v. BCG Partners, Inc.</u>, No. 10 C 715, 2011 WL 3946581, at *3 (N.D. Ill. Sept. 2, 2011).

Intertape argues that mere participation in the same trade shows and membership in the same industry does not create a plausible inference that Intertape was aware of or willfully blind to the '482 Patent. (Doc. # 47 at 12). Intertape argues Kirsch's claims are all "mere speculation," and "no details are provided regarding whether any employee of [Intertape] actually visited or spent any time at Kirsch's trade show booths . . . It is just as likely, based on the lack of any actual factual allegations, that none of this occurred." (<u>Id.</u>).

Additionally, Intertape alleges that Kirsch "has not pled facts plausibly showing that [Intertape] 'specifically intended another party to infringe the patent and knew that the other party's act constituted infringement.'" (Id. at 13). Intertape argues that "[w]hether or not [Intertape] provides installation guides to end users is of no consequence," because Kirsch fails to plead plausible facts from which the Court can infer the requisite intent required for a claim of induced infringement. (Id. at 14).

Kirsch responds that "Intertape's argument is a summary judgment argument, demanding **proof** of Kirsch's allegations." (Doc. # 52 at 14). According to Kirsch, when all factual allegations are taken as true, it sufficiently pleads facts showing Intertape was either aware of or was willfully blind of the '482 Patent, and that Intertape induced infringement. (Id. at 13).

The Court agrees. Taking all factual allegations as true, Kirsch has sufficiently alleged that Intertape was aware of the '482 Patent and that its products infringed on that patent.

First, Kirsch regularly markets its products, disseminates product literature, and participates in trade shows where it brings sample products and literature. (Doc.

# 33 at ¶¶ 39-41). Kirsch marks all of these products and the product literature with the '482 Patent. (Id. at ¶ 37). "Marking of a product has been found . . . to support an inference that a defendant had knowledge of a patent." 3D Sys., Inc. v. Formlabs, Inc., No. 13 CIV. 7973, 2014 WL 1904365, at *3 (S.D.N.Y. May 12, 2014); see also Novatel Wireless, Inc. v. Franklin Wireless Corp., No. 10CV2530-CAB (JMA), 2012 WL 12845615, at *3 (S.D. Cal. July 19, 2012) (holding that a plaintiff's "marking of its own products that compete with the accused infringed products" and listing patents on a website was sufficient to allege prior knowledge of a patent); Aladdin Temp-Rite, LLC v. Carlisle Foodservice Prod., Inc., No. 3:13-CV-00650, 2014 WL 12775193, at *3 (M.D. Tenn. July 2, 2014) (holding, at the motion to dismiss stage, Plaintiff sufficiently alleged prior knowledge of a patent by claiming the "Defendant knew of Plaintiff's patent by virtue of Plaintiff's marking of its products").

Second, Kirsch and Intertape are direct competitors in a small, niche market. (Doc. # 33 at ¶¶ 38-39). Courts have found that direct competition "heightens the likelihood that Defendant had knowledge of existing patents in the industry." 3D Sys., Inc., 2014 WL 1904365, at *3; see also Weiland Sliding Doors, 2012 WL 202664, at *4 (finding an inference of

knowledge where the complaint alleged that the parties were competitors in the "high-end lift-slide door system market").

Third, Kirsch cites two specific occasions where Intertape employees directly interacted with products and product literature marked by the patent. (Doc. # 33 at ¶¶ 43-44). Whether these interactions actually occurred or are "mere speculation" is not a question for the Court to resolve at the motion to dismiss stage. When construed in the light most favorable to Kirsch, Kirsch's allegations, taken together, sufficiently plead that Intertape was aware of the '482 patent and that their similar products infringed on the patent. Trading Techs., 2011 WL 3946581, at *3.

Furthermore, Kirsch has plausibly alleged that Intertape intended for its customers to infringe on the '482 Patent. Kirsch alleges that Intertape continues to provide installation guides, product information, specification sheets, and online instructions to customers encouraging customers to use the Accused Products in ways that infringe the '482 Patent. (Doc. # 33 at ¶ 49). "Providing instructions to use a product in an infringing manner is evidence of the required mental state for inducing infringement." Microsoft Corp. v. DataTern, Inc., 755 F.3d 899, 905 (Fed. Cir. 2014)

(citing <u>Golden Blount, Inc. v. Robert H. Peterson Co.</u>, 438 F.3d 1354, 1363-65 (Fed. Cir. 2006)).

Kirsch also alleges that Intertape continues to import and sell the allegedly infringing products in the United States, despite knowledge of the '482 Patent. (Doc. # 33 at ¶ 49). At the motion to dismiss stage, it is reasonable to infer that "by selling infringing products and showing customers how to use those products, [Intertape] intended those customers to infringe on [Kirsch's] patents." <u>Trading Techs.</u>, 2011 WL 1706136, at *4. Kirsch therefore states a plausible claim for inducement of infringement of the '482 Patent. The Motion is denied as to the induced infringement claim of Count I.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Intertape Polymer Corporation's Motion to Dismiss (Doc. # 47) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>15th</u> day of December, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

18